IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA


| | |
|---|---|
| JAIME GONZALEZ, et al.,                              )<br><br>Plaintiffs,    )<br>vs.    )<br><br>OWENS CORNING SALES, LLC and    )<br>OWENS CORNING,    )<br><br>Defendants,    )<br><br>GERALD BOEHM, et al.,    )<br><br>Plaintiffs,    )<br>vs.    )<br><br>OWENS CORNING and OWENS    )<br>CORNING SALES, LLC,    )<br><br>Defendants,    )<br><br>PATRICIA WRIGHT and KEVIN WEST, et al.,    )<br><br>Plaintiffs,    )<br>vs.    )<br><br>OWENS CORNING and OWENS CORNING    )<br>SALES, LLC,    )<br><br>Defendants,    )<br><br>EDWARD MAAG and DIANE MAAG, et al.,    )<br><br>Plaintiffs,    )<br>vs.    )<br><br>OWENS CORNING and OWENS CORNING    )<br>SALES, LLC,    )<br>Defendants,    ) | Civil Action No.: 13-cv-01378-JFC<br>Judge Joy Flowers Conti |

MEMORANDUM OPINION

The sole issue remaining in these closed cases is plaintiffs'[1] "motion to be compensated for lifting the federal bankruptcy bar and voiding the bankruptcy injunction thereby creating a common benefit for millions of shingle owners" (ECF No. 247). Defendants (collectively "Owens Corning") filed a response in opposition, plaintiffs filed a reply brief and the motion is ripe for disposition.

Plaintiffs' attorneys ask the court to exercise its discretion to award counsel fees in this case, even though a class was not certified. Plaintiffs articulate three theories: (1) the common fund doctrine; (2) the common benefit doctrine; and (3) the catalyst theory and Unfair Trade Practices Consumer Protection Law ("UTPCPL"), 73 Pa. Stat. Ann. § 201-2 et seq., fee shifting provision.

Procedural Background

Plaintiffs contend that they achieved success during this litigation which accrued to millions of Owens Corning shingle owners by reviving the right to pursue warranty claims for products installed prior to the September 26, 2006 bankruptcy discharge. On March 21, 2011, this court granted summary judgment in favor of Owens Corning and against plaintiffs Patricia Wright and Kevin West based on *JELD–WEN, Inc. v. Van Brunt (In re Grossman's Inc.)*, 607 F.3d 114 (3d Cir. 2010) ("*Grossman's*").[2] (Civil No. 09-1567, ECF No. 82). In 2012, the court of appeals reversed and held that applying *Grossman's* rule retroactively to plaintiffs' claims would violate due process. *Wright v. Corning*, 679 F.3d 101, 109 (3d Cir. 2012). As explained

---

[1] The individual plaintiffs in these consolidated cases are Patricia Wright, Kevin West, Jaime Gonzalez, Gerald Boehm and Edward and Diane Maag.
[2] The other plaintiffs were not yet part of the case.

in that decision:

> When the Plaintiffs filed their class action, there was little dispute as to the effect
> of Owens Coming's bankruptcy on the Plaintiffs' claims against it. Based on our
> much-maligned decision in *Avellino v. M. Frenville Co.* (*In re M. Frenville Co.*),
> 744 F.2d 332 (3d Cir. 1984), a "claim" under the Bankruptcy Code did not arise
> until a cause of action accrued under applicable non-bankruptcy law—that is,
> when a claimant possessed a right to payment. In this context, the Plaintiffs' cause
> of action did not accrue until the defects in the roofing shingles manifested in
> 2009, years after the Confirmation Date. Thus, at the time they filed the class
> action, the Plaintiffs were correct to conclude that they did not hold "claims"
> under the Code based on the action. But subsequently we overruled *Frenville* with
> our en banc decision in *Grossman's*, in which we rejected *Frenville's* "accrual
> test," and in its place established the rule that a " 'claim' arises when an
> individual is exposed pre-petition to a product or other conduct giving rise to an
> injury, which underlies a 'right to payment' under the Bankruptcy Code." 607
> F.3d at 125.

*Id*. at 104. Accordingly, plaintiffs retained their causes of action against Owens Corning. As a

result of the 2012 decision, warranty claims based on shingles installed prior to confirmation of

the bankruptcy plan in 2006 are not discharged as a matter of law; instead, those customers may

pursue warranty claims under the fact-intensive *Frenville* discovery rule.

Plaintiffs continued to pursue class certification for six years after the 2012 court of

appeals decision, but without success. This court denied class certification. (ECF No. 181). That

decision was affirmed by the court of appeals. (ECF No. 208). On December 19, 2018, the

court closed the case after being advised of settlement, subject only to the resolution of this

motion for counsel fees.


Legal Analysis

In *Gunter v. Ridgewood Energy Corp*., 223 F.3d 190, 195–96 (3d Cir. 2000), the court of

appeals recognized that it gives a "great deal of deference to a district court's decision to set

fees." In exercising that discretion, however, a district court must make its reasoning and

application of the fee-awards jurisprudence clear, to ensure a sufficient basis to review for abuse of discretion. *Id.*

The starting point for the analysis in this case is the "American rule," which creates a presumption that each party will bear its own counsel fees in the absence of a specific statutory or contractual entitlement. *Polonski v. Trump Taj Mahal Assoc.*, 137 F.3d 139, 145 (3d Cir. 1998). The named plaintiffs' individual claims do not support counsel fees. Instead, plaintiffs ask the court to exercise its discretion to depart from the default American rule based on success they obtained prior to the denial of class certification.

A.  Common Fund Doctrine

Plaintiffs cite *Trustees v. Greenough*, 105 U.S. 527, 534-35 (1881), for the proposition that counsel fees may be awarded under the court's equitable power to parties who create a common fund on behalf of "free riders" in situations in which it would be unjust to not recognize those efforts. *Accord Polonski*, 137 F.3d at 145 (to allow others to obtain the benefit of plaintiff's efforts without contributing to the litigation expenses would be unjust).

Plaintiffs recognize that the "common fund" doctrine is typically raised in successful class actions. They ask the court to apply the common fund doctrine in this case, even though there was no class certified and no common fund created. Plaintiffs cite *Sprague v. Ticonic National Bank*, 307 U.S. 161 (1939) (securing liens for the benefit of a trust), as an example of the common fund doctrine without a class certification. In *Sprague*, however, the Supreme Court cautioned that awarding counsel fees in such circumstances was appropriate "only in exceptional cases and for dominating reasons of justice." *Id.* at 167. Plaintiffs cite *National Treasury Employees Union v. Nixon*, 521 F.2d 317, 320 (D.C. Cir. 1975), abrogated by *Swedish*

*Hosp. Corp. v. Shalala*, 1 F.3d 1261 (D.C. Cir. 1993), for the proposition that a common fund is not necessary. In that case, however, retroactive salary payments were paid from which a counsel fee award could be calculated.

To the extent plaintiffs are asking the court to assume a class was created, the court of appeals identified factors courts should consider in determining whether attorneys' fees as part of a class action settlement are appropriate: (1) whether the entire value of benefits to the class is attributable to the efforts of class counsel; (2) whether the percentage-of-recovery request reflects the fee that would result from private negotiations; and (3) whether there are any particularly innovative terms in the settlement. *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 338-40 (3d Cir. 1998). In *Gunter*, the court of appeals identified seven factors that courts ought to consider when determining the appropriateness of an attorneys' fee request in common fund class action settlements: (1) the size of the fund created and the number of persons benefitted; (2) the presence or absence of substantial objections by members of the class to the settlement terms or fees requested by counsel; (3) the skill and efficiency of the attorneys involved; (4) the complexity and duration of the litigation; (5) the risk of nonpayment; (6) the amount of time devoted to the case by plaintiffs' counsel; and (7) the awards in similar cases. 223 F.3d at 195 n.1.[3]

The common fund doctrine is difficult to apply in this case for the simple reason that no common fund was created. The tangible economic value of counsel's efforts to the "class" is zero. No free riders were identified in this case. Plaintiffs do not seek to recover counsel fees from similarly situated parties who benefited from their efforts, but from the opposing party, Owens Corning. Alternatively, plaintiffs ask the court to impose a counsel fee award on persons

---

[3] The parties did not address the *Prudential* and *Gunter* factors.

who are not part of this case but may settle warranty claims against Owens Corning in the future

– but without notice or opportunity for them to be heard. The affected "members" of the

proposed "class" are not identifiable and have no ability to object to the fee request. It would be

purely speculative to predict the fee that may result from a private negotiation. Although

plaintiffs' counsel are skillful and the litigation was complex and long-lasting, the success

ultimately achieved was minimal. The actual settlement contained no innovative terms and

encompassed only the roofs of the named plaintiffs. The circumstances here are far different

from the common fund decisions cited by plaintiffs. In short, plaintiffs ask the court to

breathtakingly expand the common fund doctrine. Even if the court had discretion to award

counsel fees under these circumstances, it would decline to do so.


    B.  Common Benefit Doctrine

    The gravamen of plaintiffs' theory fits more closely into the "common benefit" doctrine.

As set forth in *Polonski*:

> Under the common benefit doctrine, an award of attorney's fees is appropriate
> where "the plaintiff's successful litigation confers 'a substantial benefit on the
> members of an ascertainable class, and where the court's jurisdiction over the
> subject matter of the suit makes possible an award that will operate to spread the
> costs proportionately among them.'" *Hall*, 412 U.S. at 5, 93 S.Ct. at 1946
> (quoting *Mills*, 396 U.S. at 393–94, 90 S.Ct. at 626–27). This test entails
> satisfying three distinct elements: (1) the plaintiff must confer a substantial
> benefit; (2) to members of an ascertainable class; and (3) the court must ensure
> that the costs are proportionally spread among that class. Because this test may be
> read literally to include every lawsuit against any institutional defendant, we have
> refined this language further. In *Marshall v. United Steelworkers*, 666 F.2d 845,
> 848 (3d Cir. 1981), this court inquired: (1) whether the benefits may be traced
> with some accuracy; (2) whether the class of beneficiaries are readily identifiable;
> and, (3) whether there is a reasonable basis for confidence that the costs may be
> shifted with some precision to those benefitting.

*Polonski*, 137 F.3d at 145. The benefit need not be monetary; the important considerations are

the nature and quality of the common benefits obtained. *Id*. at 146. For example, counsel fees were properly awarded "where the successful plaintiff had dispelled a 'chill' cast upon the free speech rights of all Union members by invalidating a Union rule." *Id*. at 147 (citing *Hall v. Cole*, 412 U.S. 1 (1973)).

On the other hand, the appellate court in *Polonski* cautioned that "federal courts must scrutinize the benefits conferred from litigation carefully, lest the doctrine overwhelm the American rule that each party is to bear its own litigation costs." *Id.* at 146. The "mere vindication of a legal right" does not necessarily confer a substantial benefit that would justify counsel fees. *Id*. To justify counsel fees, the "common benefit" must render a substantial service to all members of the class by correcting an abuse prejudicial to an essential right and also impact the future conduct of the defendant's affairs. *Id*. at 147. "Were the rule otherwise, any legal victory over an institutional defendant by one of its members would lead to fee shifting through the common benefit doctrine." *Id*.

In *Polonski*, the plaintiffs argued they were entitled to counsel fees because they established a violation of the union's fair representation duties under the labor laws. The court disagreed, even though it acknowledged that the litigation conferred substantial benefits to some persons involved in dispute. *Id*. at 148. The court explained: "Simple 'generalized lessons' of well-established law are not substantial benefits that form the basis of fee shifting." *Id.* The court concluded that the lawsuit did not establish significant new principles of law beneficial to all union members. *Id*.

Plaintiffs did not show that equity requires an exception to the American rule in this case. No practical, traceable substantial "common benefit" was achieved. Fundamentally, the success counsel obtained related to the legal doctrine of retroactivity, not the merits of the claims (i.e., a

holding that Oak Ridge shingles were defective). No aggrieved customer will now "win" his/her

warranty claim; instead, customers merely have the opportunity to present those claims.

Ultimately, a successful claim will not depend on retroactivity or the *Frenville* rule, but on

whether a particular customer's shingles were defective. The success in this case is analogous to

a general lesson of law that was rejected as a basis for counsel fees in *Polanski*.[4]

The members of the benefiting class are not ascertainable and there is no reasonable basis

for shifting costs. No class was certified in this action. The customers whose potential warranty

claims might otherwise have been discharged in bankruptcy are unknown. How many persons

may ultimately benefit, when and if they pursue warranty claims, is unknown. Owens Corning

points out, correctly, that plaintiffs failed to identify a single person who directly benefited.

Causation is also problematic because there is no evidence in the record to dispute Owens

Corning's representation that its warranty practices were unchanged by the result in this

litigation. (Interrogatory Response ¶ 15, ECF No. 252-5). There is simply no reliable, practical

and precise method to impose a fee award on persons who may settle warranty claims in the

future. Plaintiffs suggest the model used in *In re Building. Materials Corp. of America Asphalt

Roofing Shingle Products Liability Litigation*, No. 8:11-CV-00983-JMC, 2015 WL 1840098, at

*4 (D.S.C. Apr. 22, 2015). But in that case, there was a class settlement and the contingent fee

was to be paid out of the proceeds awarded to class members. No class settlement or claims

administration process exists, or is possible, here.

In summary, the court declines to exercise its discretion to award counsel fees under the

common benefit theory.

---

[4] Even if the court recognized a benefit, plaintiffs could recover only those counsel fees for work
achieving that benefit, i.e., the briefing and argument on the *Grossman's* and *Frenville* issue in
2011 and 2012 leading to the decision in *Wright v. Corning*, 679 F.3d at 101.

C. Catalyst/ UTPCPL Theory

Plaintiffs argue that the decision in *Templin v. Independent Blue Cross*, 785 F.3d 861 (3d Cir. 2015) (holding that the catalyst theory is available in ERISA cases), should be applied to actions under the Pennsylvania UTPCPL because neither that statute nor ERISA, 29 U.S.C. § 1132, limits counsel fees to prevailing parties. Plaintiffs argue that even though the UTPCPL claims were not adjudicated, Owens Corning's attempt to discharge warranty claims in bankruptcy was an unfair trade practice.

In *Templin*, the court explained that the catalyst theory is triggered if litigation activity pressured a defendant to settle or render the requested relief. *Id*. at 866. To succeed, though, a plaintiff must demonstrate success "on the merits." *Id*. at 867. Victory on procedural motions will not suffice. "A procedural victory that may be a way station to utter substantive defeat creates no right to fees." *Id*. n.3 (citation omitted). Even where a litigant shows success on the merits, the court has discretion to deny counsel fees, after considering the *Ursic* factors.[5] *Id.*

Plaintiffs did not cite any decision applying the catalyst theory to a UTPCPL claim. This court's independent research did not locate any such decisions. The analysis in *Templin* about the availability of counsel fees under the federal ERISA statute sheds little light on the availability of counsel fees under a Pennsylvania statute like the UTPCPL. In *Cottrell v. Nicholson Properties LLC*, No. 112CV2128NLHKMW, 2018 WL 4062723 (D.N.J. Aug. 24,

---

[5](1) the offending parties' culpability or bad faith;
(2) the ability of the offending parties to satisfy an award of attorney's fees;
(3) the deterrent effect of an award of attorney's fees;
(4) the benefit conferred upon members of the pension plan as a whole; and
(5) the relative merits of the parties' positions.
*Ursic v. Bethlehem Mines*, 719 F.2d 670, 673 (3d Cir. 1983).

2018), a sister court recently declined to award counsel fees and noted: "the Third Circuit has rejected the argument that "the catalyst theory is alive and well in this judicial circuit," instead referring to the theory as "moribund." *Id*. at *13 (citing *A.P. Boyd, Inc. v. Newark Pub. Sch.*, 44 F. App'x 569, 573 (3d Cir. 2002)).

Even if the court had authority to consider counsel fees under the catalyst theory, it would decline to award them. As explained above, plaintiffs achieved procedural success on the legal issue of retroactivity, but did not obtain success "on the merits." After many years of litigation, class certification was denied and the settlement involved only the roofs of the named plaintiffs. Plaintiffs did not demonstrate that they catalyzed changed behavior by Owens Corning; the record reflects that its warranty practices were unchanged by the result in this case. (ECF No. 252-5). In addition, the court is unwilling to adjudge Owens Corning liable under the UTPCPL. To the contrary, the court is not convinced that Owens Corning's reliance on the Third Circuit Court of Appeals' decision in *Grossman's* was in bad faith, i.e., the first *Ursic* factor. Further litigation of the UTPCPL claim in an effort to recovery counsel fees is not warranted. This case is settled. In sum, the court will not award counsel fees under the catalyst theory, even if it were not moribund.


Conclusion

Plaintiffs' motion for counsel fees will be denied. An appropriate order follows.


/s/ Joy Flowers Conti

February 13, 2019                                   Senior United States District Judge


cc: All Counsel of Record

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JAIME GONZALEZ, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| vs. | ) | |
| | ) | |
| OWENS CORNING SALES, LLC and OWENS CORNING, | ) | |
| | ) | |
| | ) | |
| Defendants, | ) | |
| | ) | |
| GERALD BOEHM, et al., | ) | |
| | ) | Civil Action No.: 13-cv-01378-JFC |
| Plaintiffs, | ) | Judge Joy Flowers Conti |
| vs. | ) | |
| | ) | |
| OWENS CORNING and OWENS CORNING SALES, LLC, | ) | |
| | ) | |
| | ) | |
| Defendants, | ) | |
| | ) | |
| PATRICIA WRIGHT and KEVIN WEST, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| vs. | ) | |
| | ) | |
| OWENS CORNING and OWENS CORNING SALES, LLC, | ) | |
| | ) | |
| | ) | |
| Defendants, | ) | |
| | ) | |
| EDWARD MAAG and DIANE MAAG, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| vs. | ) | |
| | ) | |
| OWENS CORNING and OWENS CORNING SALES, LLC, | ) | |
| | ) | |
| Defendants, | ) | |

<u>ORDER</u>

AND NOW this 13th day of February, 2019, in accordance with the foregoing memorandum opinion, it is hereby ORDERED that plaintiffs' motion for counsel fees (ECF No. 247) is **DENIED**.


<u>/s/ Joy Flowers Conti</u>
Senior United States District Judge